IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE E. JOHNSON, SR.,

    Petitioner,                        No. CIV S-01-0657 FCD JFM P

    vs.

MIKE KNOWLES, Warden,

    Respondent.                   FINDINGS AND RECOMMENDATIONS

                        /

        Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1998 conviction on charges of committing murder, infliction of injury on his spouse, assault with a knife, terrorist threats, attempted intercourse against his spouse's will and by use of force, personal use of a firearm or deadly weapon in the commission of the murder and assault, commission of the previous offenses while released from custody, one prior serious felony conviction, and one prior conviction for spousal abuse. Petitioner claims that his right to a fair trial was violated due to a jury instruction error, and the prosecution's use of prior uncharged offense evidence to prove petitioner had a propensity to commit sexual offenses violated his due process rights.[1] After

---

[1] This action is proceeding on the amended petition filed June 11, 2002.

1

review of the entire record in this action, including the lodged records of the state court; and after careful consideration, this court has determined that the petition for habeas corpus should be granted.

## FACTS[2]

The following evidence was adduced at trial:

> In September 1996, [petitioner] and his wife Linza were in the process of separating (as prelude to divorce proceedings commenced in November 1996). On September 29, 1996 (counts 2-5), [petitioner] and Linza had a fight. Their son George (age 22 at the time of trial) found Linza crying and limping when he came home that morning. The son took her to a doctor, who treated her for a contusion. The next day, the police arrived (having been called by the son) and took a statement from Linza that [petitioner] was drunk and angry at her for not attending a cousin's party. They argued, he called her a tramp, pushed her to the floor, grabbed her by the hair, and held a knife to her neck. Still holding the knife, he ordered her to strip naked. She complied. [Petitioner] undressed, displaying an erection, and got on top of Linza. She spit on his face and pushed him off of her. While the police were taking Linza's statement, [petitioner] arrived and began arguing with Linza. He was arrested. A friend of Linza testified she spoke on the phone to Linza the night of the fight, during which Linza sounded frightened and [petitioner] could be heard screaming in the background. A deputy district attorney testified that in early October 1996, Linza stated she had been having an extramarital affair for about three months, and [petitioner] knew about the affair.

> A friend of Linza testified that on October 11, 1996 (count 6 – terrorist threat), Linza called the friend and related that when she arrived at work that morning, [petitioner] was there and approached her car, cussed at her and yelled, "I'm going to kill you." Linza drove away. [Petitioner] was gone when she returned several minutes later.

> On November 9, 1996 (count 7), son George saw Linza arrive home (having spent the night at her lover's home), very distraught. Linza told her son that [petitioner] had just tried to run her down with his car while she was in her car. She said [petitioner's] car hit Linza's car and hit several mailboxes. A California Highway Patrol (CHP) officer found mailboxes lying in the roadway next to

---

[2] The facts are taken from the opinion of the California Court of Appeal for the Fifth Appellate District in People v. Johnson, No. C028945 (January 5, 2000), a copy of which is attached as Ex. E to Respondent's Motion to Dismiss, filed April 9, 2002.

tire skid marks, and [petitioner's] license plate in some bushes. [Petitioner's] sister testified he told her about the accident and said his car hit some mailboxes when a tire blew.

In November and December, 1996 (count 8 – stalking), [petitioner] and his wife were separated, but he repeatedly came to the house and called on the phone, threatening to kill her. He also called her at work repeatedly. Linza obtained a restraining order.

On the morning of December 12, 1996 (count 1 – murder), Linza was in the process of moving, with help from friends and her son. [Petitioner] appeared, snatched the house keys from his son's hand, used the keys to enter the house, and yanked the kitchen phone from its socket. [Petitioner] pulled a gun from his pocket and pressed it against his son's stomach. The son knocked the gun away. [Petitioner] retrieved it. The son ran across the street to call the police. While on the phone, he saw [petitioner] screaming outside the house and heard several gunshots. [Petitioner], still holding the gun and with bloody arms, got into Linza's car and drove away. The son found Linza lying near the front door of the house. A friend of Linza who was in the house at the time testified she saw and heard [petitioner] yelling at Linza and heard glass breaking in the front door. While the friend was on a bedroom phone calling the police, she heard gunshots. The friend hid in a closet for a few minutes and then emerged and found Linza lifeless on the floor against the front door. A neighbor testified he heard the yelling and gunshots and saw [petitioner] hurriedly drive away.

Linza died of a gunshot wound which was not self-inflicted.

[Petitioner's] cousin testified he received a visit that morning from [petitioner], who stated he shot once, did not know if he hit Linza, so he shot two more times.

Over [petitioner's] objection, the trial court granted the prosecution's request to introduce evidence of the following prior acts pursuant to Evidence Code section 1109:

In 1986, son George saw [petitioner] slap Linza, pull a gun on her, grab her by the hair, and punch her in the face. In December 1998, the son saw [petitioner] punch Linza in the stomach, upon which she collapsed and had a seizure. [Petitioner] admitted the blow to a responding deputy sheriff. The son also saw [petitioner] punch Linza as she was driving a car in August 1992. The son called the police on his father about seven or eight times between 1986 and 1996.[3]

---

[3] [Petitioner's] appellate brief cites as "Evidence Relating to Uncharged Acts" testimony which appears to be evidence going to the stalking charge in count 8, e.g., a friend testified to being in a car with Linza in December 1996, being chased by [petitioner]. As we [the state

3

>The defense presented the following evidence: A doctor testified he treated [petitioner] for impotence beginning in December 1995. He prescribed a pump which apparently helped [petitioner] achieve erection.
>
>[Petitioner] testified in his own behalf. He is diabetic and has impotence problems. He and Linza had marital problems. She had a boyfriend, but that did not upset [petitioner]. In May 1996, she and son George forged a $5,000 check against his bank account. He threatened to have her prosecuted. He was engaged in ongoing discussions with Linza about when she would move out of the house so he could move back in. He denied the charges against him. The incident in which his car hit the mailboxes was an accident due to a tire blowout. On the day of the killing, [petitioner] was angry because he just wanted his keys. He had no particular reason for carrying with him that day the gun which he had purchased months earlier for his sister's protection. The shooting was an accident. He threw the gun away because he was afraid the police would shoot him if they stopped him with a gun in his possession.
>
>In the prosecution's rebuttal case, a deputy sheriff testified regarding the September 1996 incident that [petitioner] admitted being angry at Linza for not attending his cousin's party but denied ever hitting her, did not mention any forged check, and said Linza might make up stories about him because he wanted a divorce.

(People v. Johnson, slip op. at 3-7.)

## ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

/////

---

appellate court] discuss post, although [petitioner] claims this evidence was used as propensity evidence as well as substantive evidence of the charged offenses, we see no indication that the prosecution used these incidents as propensity evidence.

We note the trial court also granted the People's motion to admit hearsay statements of Linza pursuant to section 1370.

4

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

/////

/////

/////

5

II. Petitioner's Claims

    a. Jury Instruction Claim

Petitioner essentially contends he suffered structural error at trial because the use of jury instructions CALJIC 2.50.01 and 2.50.1 lowered the burden of proof required to convict him of the instant charges. In re Winship, 397 U.S. 358, 364 (1970)(A defendant can only be convicted on the basis of evidence found to be true beyond a reasonable doubt.); Sullivan v. Louisiana, 508 U.S. 275, 281 (1993)("[T]he essential connection to a 'beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings.")  Indeed, in 1999, CALJIC No. 2.50.01 was revised to clarify how jurors were required to evaluate the defendant's guilt relating to the charged offense if they found that he had committed a prior sexual offense.   The following paragraph was added to the end of the otherwise unchanged instruction:

> However, if you find by a preponderance of the evidence that the defendant committed [a] prior sexual offense[s], that is not sufficient by itself to prove beyond a reasonable doubt that [he] [she] committed the charged crime [s].  If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.

CALJIC No. 2.50.01 (7th ed.1999).

The granting of petitioner's request for a writ of habeas corpus hinges upon a finding that the trial court use of CALJIC No. 2.50.01, together with CALJIC No. 2.50.1, and the affirmation of that decision on appeal, were contrary to clearly established Federal law as determined by the Supreme Court of the United States.  The decision of the United States Court of Appeals for the Ninth Circuit in Gibson v. Ortiz, 387 F.3d 812, 919 (9th Cir. 2004) appears to require that this petition be granted.

The Gibson court found a due process "lessening of the burden of proof" problem with the combination of CALJIC 2.50.01 and 2.50.1.  Gibson, 387 F.3d at 919.  The Gibson

court held that relating to the jury that they could infer that plaintiff committed the crime by proof of prior offenses, and immediately relating to the jury that the requisite proof could be established by only a preponderance of the evidence, instructed the jury that proof of the charged offense could be found by a preponderance of the evidence.  Id., 387 F.3d at 822.

By order filed July 28, 2005, both parties were ordered to brief the application of Gibson herein.  On August 12, 2005, petitioner filed his response, essentially arguing that Gibson is directly on point on petitioner's jury instruction claim.  On August 15, 2005, respondent filed his supplemental briefing.  Respondent attempted to factually distinguish the instant case from Gibson, and to point out just how strong the nonpropensity evidence against petitioner was,[4] even arguing that the analysis of Gibson was flawed.  (Resp.'s Supp. Brief.)

However, Gibson was an AEDPA habeas case that found that clearly established Supreme Court law concerning lessening the burden of proof permitted it to grant the petition in its CALJIC 2.50.01 context.  The undersigned is bound by that interpretation of the status of the law, and thus, does not discuss it at length.  That is, if the prosecution's burden of proof was lessened in Gibson, and this court is faced with the same instruction at issue in Gibson, the undersigned cannot find that the Ninth Circuit wrongly interpreted Supreme Court precedent.

In the instant case, the prosecution moved to introduce evidence of the allegations of prior acts of domestic violence pursuant to Evidence Code §§ 1109 and 1370.  (CT 157; RT 26-88.)  The prosecution sought to introduce evidence of six alleged acts that occurred between December 4, 1986 and August 23, 1992.  (CT 160-61.)  Petitioner objected to the introduction of any of the evidence on the grounds that it would violate his right to confrontation and to due

---

[4] Respondent argues that the evidence against petitioner Johnson was "very strong." (Resp.'s Supp. Brief at 8.)  However, the state appellate court in Gibson found the direct evidence against Gibson was "compelling."  Id. at 819.  Moreover, because the jury was allowed to convict petitioner of offenses proved only by a preponderance of the evidence, representing a structural error under Sullivan, supra, this court does not agree with the harmless error analysis conducted by the California Supreme Court in People v. James, 81 Cal.App.4th 1343 (2000)(finding that overwhelming evidence made it clear beyond a reasonable doubt that the verdict would have been the same with a proper instruction.)

process of law guaranteed by the United States and California Constitutions. (CT 208; RT 33.) Petitioner also objected that adequate notice of the prosecution's intent to introduce this evidence had not been made as required by Evidence Code § 1109. (CT 208; RT 27.)

The trial court overruled petitioner's due process challenge to both Evidence Code § 1109 and § 1370, each time noting on the record it was a close question. (RT 31, 32.) The trial court overruled petitioner's Sixth Amendment challenges as well. (RT 33.)

The trial court then admitted the evidence contained in Exhibits 1 - 6 appended to the prosecution's motion to be evidence of petitioner's propensity for domestic violence.[5] (RT 54-55; 66-69; 77.) The trial court also allowed as evidence of petitioner's propensity for domestic violence testimony regarding an incident on August 23, 1992 (RT 86-88, 330), an incident occurring in 1988 (RT 222-23), and an incident on December 4, 1986 (RT 82-84).

The jury was instructed as to the propensity evidence, in pertinent part, as follows:

> Evidence has been introduced for the purpose of showing that the defendant engaged in domestic violence on one or more occasions other than that charged in the case.
>
> . . .
>
> If you find that the defendant committed prior domestic violence, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type domestic violence. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he was accused.
>
> You must not consider this evidence for any other purpose.

(CT 259.)(CALJIC 2.50.01) The jury was then further instructed as follows:

> Within the meaning of the preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed crimes other than those for which he is on trial.

---

[5] The trial court also allowed this evidence to be admitted as substantive evidence of the charged offenses. (RT 54-55; 66-69; 77.)

8

> You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other crimes.

(CT 260.)(CALJIC 2.50.1)  The trial court then instructed the jury on the preponderance of the evidence standard:

> "Preponderance of the evidence" means evidence that has more convincing force than that opposed to it.  If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.
>
> You should consider all of the evidence bearing upon every issue regardless of who produced it.

(CT 261.)(CALJIC 2.50.02)  Petitioner's trial counsel requested that the jury instructions be modified to require the jury to find the propensity evidence beyond a reasonable doubt in order to avoid the problem at issue here.  (RT 974.)  However, the trial court overruled counsel's request even while acknowledging that the objection was "not frivolous."  (RT 974-75.)

In closing argument, the prosecution specifically argued the prior acts showed propensity:

> This incident [the September 29, 1996 incident] is fully corroborated as it occurred by Linza Johnson's statement, but the law allows you to look at more because, in this particular case, you heard evidence that the [petitioner] beat Linza Johnson numerous times.  You heard evidence from 1986 that he beat Linza Johnson.  You heard evidence from 1988 that he beat Linza Johnson.  You heard evidence from 1992 that he beat Linza Johnson.
>
> You heard from his own mouth that he beat Linza Johnson, and the law determines that you may consider that evidence in determining, if he did it before then, there is a – good likelihood he did it again.
>
> The law says you are allowed to use that evidence for that purpose, and you have had that evidence presented to you strictly for that purpose, that he did it before and he'll do it again.  And it makes perfect sense that he did it again, and he did it on September 29th of 1996.

(RT 1012-13.)  The prosecution again raised propensity evidence when she discussed repeated incidents in 1986, including uncharged incidents involving petitioner's son, George Jr., which the

9

prosecution used to argue that petitioner lied about his reason for going to the house on that occasion. (RT 1042, 1045-46.) The prosecution included propensity evidence in her argument concerning premeditation, specifically pointing to incidents during the fall of 1996 as evidence of premeditation. (RT 1060-61.)

The state court of appeal did not specifically address the constitutionality of the use of CALJIC 2.50.01 together with 2.50.1. The appellate court found that the trial court's failure to tailor an instruction to clarify that propensity evidence alone could not be used to convict petitioner did not constitute reversible error. (People v. Johnson, slip op. at 22.) The state appellate court went on to apply a harmless error analysis, relying on People v. Falsetta, 21 Cal.4th 903, 89 Cal.Rptr.2d 847 (1999).[6] The court noted that CALJIC No. 2.50.01 did not tell the jury it could *convict* petitioner based on the prior acts evidence, only that it could infer that he *committed* the charged offenses. (People v. Johnson, slip op. at 24.) The state appellate court then viewed the challenged instructions in the context of the entire record, ultimately finding it was not reasonably likely the jury misapplied the instruction and thus there was no instructional error warranting reversal. (People v. Johnson, slip op. at 28.)

The CALJIC 2.50.01 and 2.50.1 jury instructions used in the instant action track the language used in the Gibson jury instructions, with the exception that Gibson used "sexual offense" in place of "domestic violence." Gibson, 387 F.3d at 817. The critical language "If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he was accused," was verbatim to the Gibson language, and it is undisputed that petitioner's jury did not receive the cautionary language added in the 1999 revision.

/////

---

[6] Falsetta held that evidence of other sexual offenses pursuant to Cal. Evidence Code § 1108 cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or mislead the jury. Id.

Therefore, the trial court's use of jury instructions CALJIC 2.50.01 and CALJIC 2.50.1 allowed the jury to find petitioner guilty of the charged offenses by relying on facts found only by a preponderance of the evidence. This lessened burden of proof violated petitioner's due process rights under In re Winship, 397 U.S. 358 (1970), which requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt. Thus, the constitutionally infirm instruction deprived petitioner of a "jury verdict within the meaning of the Sixth Amendment." Sullivan v. Louisiana, 508 U.S. 275, 280 (1993). In light of Gibson, Winship, and Sullivan, this court is compelled to conclude that the state court's decision to use jury instructions CALJIC 2.50.01 and 2.50.1, and the state appellate court's affirmation of that decision, were contrary to clearly established Federal law as determined by the Supreme Court of the United States. Therefore, the petition for writ of habeas corpus should be granted on petitioner's first claim.

    b.  Uncharged Evidence Claim

In his second claim, petitioner alleges that the trial court violated his right to due process when it admitted evidence of prior uncharged acts of violence or force against his wife, Linza.[7]

The trial court overruled petitioner's due process challenge to both Evidence Code § 1109 and § 1370, each time noting on the record it was a close question. (RT 31, 32.) The trial court overruled petitioner's Sixth Amendment challenges as well. (RT 33.) The trial court also found that the petitioner was provided adequate notice of the prosecution's intent to introduce the evidence pursuant to Cal. Evid. Code § 1109. (RT 45.) However, the court found that

---

[7] As noted above, these acts were described by the state appellate court as follows: "In 1986, son George saw [petitioner] slap Linza, pull a gun on her, grab her by the hair, and punch her in the face. In December 1998, the son saw [petitioner] punch Linza in the stomach, upon which she collapsed and had a seizure. [Petitioner] admitted the blow to a responding deputy sheriff. The son also saw [petitioner] punch Linza as she was driving a car in August 1992. The son called the police on his father about seven or eight times between 1986 and 1996." (People v. Johnson, at 6, footnote omitted.)

statements made by Linza to law enforcement officers that predated the filing of the action by more than five years were inadmissible under Cal. Evidence Code § 1370. (RT 45-46.)

The California Court of Appeal found the evidence of previous violence against Linza was properly admitted under California Evidence Code §§ 352 and 1109. (People v. Johnson, slip op. at 9-18.) The Court of Appeal relied on People v. Falsetta, 21 Cal. 4th 903 (1999), reasoning that § 1108 and § 1109 are virtually identical, except that one addresses prior sexual offenses while the other addresses domestic violence.[8]

The question whether evidence of prior uncharged acts was properly admitted under California law is not cognizable in this federal habeas corpus proceeding. Estelle v. McGuire, 502 U.S. at 67. The only question before this court is whether the trial court committed an error that rendered the trial so arbitrary and fundamentally unfair that it violated federal due process. Id. See also Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991) ("the issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point"). A writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" Mancuso, 292 F. 3d at 956 (quoting Barefoot v. Estelle, 463 U.S. 880, 899 (1983). Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence." Jammal, 926 F. 2d at 920. Even then, evidence must "be of such quality as necessarily prevents a fair trial." Id. (quoting Kealohapauole v. Shimoda, 800 F.2d 1463 (9th Cir. 1986)). For purposes of AEDPA, petitioner must demonstrate that the California courts' rejection of his federal due process claim was contrary to or an unreasonable application of "clearly established Federal law, as determined by

---

[8] Subsequently, the California Court of Appeal for the Third Appellate District held that Cal. Evid. Code § 1109, which allows evidence of a defendant's prior domestic violence in a prosecution for an offense involving domestic violence, does not violate defendant's right to due process. People v. Johnson, 77 Cal.App.4th 410, 91 Cal.Rptr.2d 596 (2000).

the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).

Under Ninth Circuit law, the admission of "other acts" evidence violates due process only if there were no permissible inferences the factfinder could have drawn from the evidence. See McKinney v. Rees, 993 F.2d 1378, 1381 (9th Cir. 1993) (question is "whether any inferences relevant to a fact of consequence may be drawn from each piece of the evidence, or whether they lead only to impermissible inferences about the defendant's character"); Jammal, 926 F.2d at 920 ("[e]vidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions"). See also United States v. LeMay, 260 F.3d 1018, 1027 (9th Cir. 2001) (evidence of prior similar crimes "will only sometimes violate the constitutional right to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little relevance it might have").

In LeMay the Ninth Circuit Court of Appeals held there is nothing fundamentally unfair about allowing propensity evidence so long as protections, such as those provided under Federal Rule of Evidence 403, remain in place to ensure that devastating evidence of little probative value will not reach the jury. 260 F.3d at 1026.[9] There is no exclusive list of factors that courts should evaluate in determining whether to admit evidence of a defendant's prior acts of sexual offenses. Rather, judges should consider factors relevant to individual cases, such as (1) the similarity of the prior acts to the acts charged; (2) the closeness in time of the prior acts to the acts charged; (3) the frequency of the prior acts; (4) the presence or lack of intervening circumstances and (5) the necessity of the evidence beyond the testimony already offered at trial. LeMay, 260 F.3d at 1028; Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1268 (9th Cir.

---

[9] Fed. R. Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substanially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

2000) (citing United States v. Guardia, 135 F.3d 1326, 1330 (10th Cir. 1998)). "A court should pay 'careful attention to both the significant probative value and the strong prejudicial qualities' of that evidence." LeMay, 260 F.3d at 1027 (quoting Glanzer, 232 F.3d at 1268).

Petitioner's trial was not rendered fundamentally unfair because of the admission of evidence of petitioner's prior uncharged acts of violence against Linza. The prior crimes evidence against petitioner was relevant to the charged crimes and, as admitted by petitioner, much of the uncharged evidence was admitted as substantive evidence as well as circumstantial evidence of petitioner's propensity for domestic violence. (Pet.'s Reply at iv, citing Exhibits 1 - 6 appended to the prosecution's motion for admission of evidence (CT 168; 172; RT 54-55 et seq.; 66-69, 77) Moreover, evidence of uncharged acts against Linza could have been admitted in this case to show petitioner's intent. Arguably, the evidence was admitted to demonstrate an escalating pattern of domestic violence, culminating in the 1996 murder of petitioner. (People v. Johnson, slip op. at 14 (discussing the legislature's reasoning behind Evidence Code § 1109).) For this reason, there was a rational inference the trial court could draw from the bulk of the challenged evidence that was not constitutionally impermissible.

In addition, the other incidents testified to by petitioner's son, Dr. Friend (a treating physician) and Sergeant Yee were no more inflammatory than the circumstances of the charged crimes – in fact, they were decidedly less inflammatory. Petitioner partially corroborated this evidence by admitting he punched Linza's side in 1988. (RT 852-53.) "[The fact] that prior acts evidence is inflammatory is not dispositive in and of itself." LeMay 260 F.3d at 1030.

In addition, the trial judge limited the admission of propensity evidence, barring any evidence that predated the filing of the action by more than five years. Thus, the evidence concerned events that were not too remote to the charged acts.

For these reasons, any error in admitting this evidence would not have had a "substantial and injurious effect on the verdict." Brecht, 507 U.S. at 623.

/////

1. The United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003). In Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991), the Supreme Court left open the question whether the use of propensity evidence would violate due process. Because the Court declined to reach the question, there is no clearly established federal law forbidding the use of such evidence. Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir.), cert. denied, 540 U.S. 930 (2003); see also Smith v. Pliler, 278 F. Supp. 2d 1060, 1074-75 (N.D. Cal. 2003) (Cal. Evid. Code § 1109 does not violate due process); cf. United States v. LeMay, 260 F.3d 1018, 1026 (9th Cir. 2001) (finding no due process violation in similar provision of Federal Rules of Evidence). Thus, the state Court of Appeal's decision did not violate clearly established federal law.

Further, any error in admitting this testimony did not have "a substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637. See also Penry v. Johnson, 532 U.S. 782, 793-96 (2001). As described above, the evidence against petitioner was strong, consisting of his son's testimony and the testimony of other witnesses, along with objective evidence of bodily injury sustained by the victim.

Accordingly, for all of these reasons, petitioner is not entitled to relief on this claim.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be granted on his claim that his constitutional rights were violated by the use of jury instructions CALJIC 2.50.01 and 2.50.1 and denied in all other respects; and

/////

1          2.  Petitioner be released from custody unless the state elects to retry him within sixty days from the conclusion of these federal habeas corpus proceedings.

          These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 25, 2005.

UNITED STATES MAGISTRATE JUDGE

1; john0657.157